Joseph Gallant *vs.* The Great Northern Paper Company.

Androscoggin.   Opinion December 8, 1915.

*Assumption of Risk.   Damages.   Dynamite.   Fellow Servant.   Injuries. Log Driving.   Public Laws of 1909, Chapter 258.*

1. The words "engaged in cutting, hauling or driving logs," as used in Sec. 8, Chapter 258, Public Laws of 1909, commonly spoken of as the Employers Liability Act, includes any actual log driving labor, regardless of whether the employer is the owner of the logs driven or not, and irrespective of the use he may intend to make of the logs after they have been driven.

2. The defendant cannot be held negligent because of the fact that it furnished dynamite for the use of its servants in the log driving operations, for dynamite is customarily furnished by the proprietors of such operations to be used by their servants in prosecuting the work of driving logs.

3. A servant of mature years and common intelligence, when he engages to serve an employer, is conclusively held to assume the risks of danger which are known to him, as well as those which are incident to his work and which are obvious and apparent to one of his intelligence.

4. A servant who is injured by the negligence or misconduct of his fellow servant cannot maintain an action against his employer for such injuries, unless the employer was negligent in the selection of that fellow-servant. The risk of injury by a fellow-servant is a risk the employee assumes.

5. The fact that the negligent servant is a foreman does not change the rule, unless at the time he was representing the master. The test is the nature of the duty that is being performed by the negligent servant at the time of the injury, and not the comparative grades of the two servants.

6. In going with the others in the boat containing the exposed dynamite ready for use in breaking the jam, a fact which he knew, the plaintiff must be held to have assumed the risks of danger to himself incident thereto, including the negligence of his fellow-servants in the boat.

7. The actual handling and using of dynamite in log driving operations is not such a duty owing from the master to his servant as the law forbids the master to delegate to another so as to relieve himself from the consequences of the negligence of those handling and using it.

8. In this case the foreman was the plaintiff's fellow-servant at the time of the accident, and that for his negligence whereby the plaintiff was injured, the defendant is not liable in this action.

9. The uncontroverted facts disclosed in the case do not sustain the plaintiff's action.

On report.  Judgment for defendant.

An action brought by plaintiff to recover damages for personal injuries sustained by him while in the employment of defendant and in consequence of its negligence.  Plea, general issue with brief statement, in which it is claimed that Section 8 of Chapter 258 of the Public Laws of 1909 does not apply to those engaged in driving logs.

The case is stated in the opinion.

*McGillicuddy & Morey,* for plaintiff.

*White & Carter,* for defendant.

SITTING:  SAVAGE, C. J., SPEAR, KING, BIRD, HALEY, HANSON, JJ.

KING J.  Action to recover damages for personal injuries sustained by the plaintiff on May 12, 1914, while in the defendant's employ as a river driver.

The action was brought under the provisions of Chapter 258 of the Public Laws of 1909, known as the Employers Liability Act. An amendment was allowed, adding a count at common law, with a stipulation of the parties to report the case to the Law Court upon the evidence and the special finding by the jury as to damages, that court to direct such judgment as the law and evidence require, both as to the defendant's liability and as to the amount of damages.

The material facts are not in controversy.  The plaintiff was working in a crew of river drivers on the defendant's drive on Elm Stream in the northern part of the State.  Frank Crockett was the foreman of that crew.  He worked with the other men in driving, and his duty as foreman was to see that the crew worked efficiently. He received his orders from an assistant superintendent of the whole drive on the stream.  On the day the plaintiff was injured he and eight other men including the foreman went in a boat a short distance up Elm Stream pond to release and bring down a quantity of logs that were being kept back or jammed by ice.  Sticks of dynamite, primed and ready for use in breaking the jam, were taken in the boat in an open box.  There was also a bag containing dynamite put into the boat.  The plaintiff thus describes the accident that caused his injuries.

"The foreman, until we got up where the logs were, opposite the logs, stood in the middle of the boat, between the second and third

seats. When we got up where he wanted to stop, he gave orders for us to stop the boat, stepping over the second and forward seat, and began to light some of the dynamite, standing directly over the box. He lit a few sticks, and finally, I was seated back to him, I turned around and see him light one stick, and saw the fire sputter, and the match drop in the box. I was looking on the ice every time he threw a stick, and I kind of turned my head towards the ice where he was in the habit of throwing the sticks, and the whole thing exploded." As a result of the explosion three of the men in the boat, including the foreman, were killed, and the plaintiff was badly injured.

1. It is provided in the Employers Liability Act, supra, (Sec. 8) that its provisions shall not apply to injuries to persons "engaged in cutting, hauling or driving logs." The plaintiff, however, contends that the work he was doing when injured should be regarded as a part of the defendant's process of manufacturing pulp and paper, since the logs he was working on were to be used ultimately by the defendant for that purpose at its pulp and paper mills, and, therefore, that he was not "driving logs" within the meaning of the exemption in the Act. We think that contention is without merit. The work in which the plaintiff was engaged was being carried on more than a hundred miles from the defendant's manufacturing plant. It was in fact the work of "driving logs" and we are unable to perceive any reason why it must not be so classified, regardless of the ownership of the logs or the use to be made of them. The language of the exemption is explicit and unqualified. The meaning of the expression "driving logs" is clear, and free from all uncertainty. It includes we think any actual log driving labor, regardless of whether the employer is the owner of the logs driven or not, and irrespective of the use he may intend to make of the logs after they have been driven. We entertain no doubt, therefore, that the plaintiff was engaged in "driving logs" at the time of his injuries, and for that reason the Employers Liability Act affords him no remedy therefor.

2. It remains to be considered if the plaintiff has established that he is entitled to recover under his count at common law.

That the use of dynamite in log driving operations is a common practice is conceded. It is customarily furnished by the proprietors of such operations to be used by their servants in breaking ice and

log jams, and otherwise in the work of driving logs. Nor was the plaintiff ignorant of the custom. He was an experienced log driver, and testified that he knew that dynamite was used by river drivers to blow jams and for any purpose that such power is required. Moreover, he knew that it was being used on that drive, and he had seen it used there. The defendant, therefore, cannot be held negligent because of the fact that it furnished dynamite for use on this drive. Nor can the plaintiff claim want of information of that fact for he knew it.

He alleges that the defendant failed to provide for him a safe place to work. The boat itself was not unsafe. It became so at the time of the accident by reason of the presence of the dynamite in it and the act of Mr. Crockett whereby it was exploded. Indeed there can be no doubt from the evidence that this most unfortunate accident was the result of Mr. Crockett's carelessness. All the alleged acts of negligence of which the plaintiff complains, both of omission and commission, were the acts of Crockett. If it was negligence to take into the boat sticks of dynamite already primed and in an open box, that was the particular act of Crockett. He put them into the boat in that condition, according to the plaintiff's own testimony. If any particular one of those in the boat was more at fault than the others because they remained in the boat while the dynamite was being used, it was perhaps Mr. Crockett. But it does not appear that the plaintiff, or any of the others, even suggested that the sticks of dynamite should not be lighted while they were in the boat, although the plaintiff says "he had thrown out four or five charges *at different times* before the boat blew up." And certainly it was the carelessness of Mr. Crockett in *using* the dynamite that was the proximate cause of the explosion.

It is the well settled rule in this State that a servant of mature years and of common intelligence, when he engages to serve an employer, is conclusively held to assume the risks of danger which are known to him, and as well those which are incident to his work and which are obvious and apparent to one of his intelligence and experience. *Caven* v. *Granite Co.,* 99 Maine, 278; *Coolbroth* v. *Maine Central R. R. Co.,* 77 Maine, 165. It is well settled, too, that a servant who is injured by the negligence or misconduct of his fellow-servant cannot maintain an action against his employer for

such injuries, unless the employer was negligent in the selection of that fellow-servant. *Conley* v. *Portland,* 78 Maine, 217; *Cowan* v. *Pulp Co.,* 91 Maine, 29. The risk of being injured by the negligence of a fellow-servant is a risk that an employee assumes. And the fact that the negligent servant is a foreman does not change the rule, unless at the time he was representing the master. *Lawler* v. *Androscoggin R. R. Co.,* 62 Maine, 463; *Conley* v. *Portland,* supra; *Doughty* v. *Penobscot Log Driving Co.,* 76 Maine, 143; *Small* v. *Mfg. Co.,* 94 Maine, 551. And in the case last cited it was said: "The test which determines the master's liability for the negligence of one employee whereby injury is caused to another, is the nature of the duty that is being performed by the negligent servant, at the time of the injury, and not the comparative grades of the two servants."

Applying these well settled rules to the facts disclosed in this case, it seems clear that the plaintiff is not entitled to recover. He testified that before he got into the boat he saw "the foreman put the box of dynamite, about half full or better, in front of the forward seat in the boat, up in the bow," that it was "primed," and "was exposed," and that the fuses were "about six or seven inches long," and that he also saw another man put a bag of dynamite into the boat, "front of the forward seat." He was not compelled, knowing those conditions, to go in the boat against his will. He went along with the others at the suggestion of Crockett that he wanted a boat's crew to go up and get the logs. In going with the others in the boat containing the exposed dynamite ready for use in breaking the jam, a fact which he knew, he must be held to have assumed the risks of danger to himself incident thereto, including the negligence of his fellow-servants in the boat.

And we are constrained to the conclusion, according to the well settled rules of law, that Mr. Crockett was the plaintiff's fellow-servant at the time of the accident. All of the boat's crew were at the time engaged in the common work of driving logs, and to that end Crockett was using the dynamite which the defendant had furnished for such a use. In using it we think he did not stand in the place of the defendant as performing a duty owing from it to the plaintiff. The actual handling and using of dynamite in log driving operations is not, we think, such a duty owing from the master to his servant as the law forbids the master to delegate to another so as

to relieve himself from the consequences of the negligence of those handling and using it.

It is also alleged that Mr. Crockett was an incompetent servant, and that the defendant was negligent in employing him. But no proof was offered in support of that allegation. On the other hand the defendant's superintendent testified that Mr. Crockett was an experienced river driver and woodsman and had been in the defendant's employ for about two years.

The uncontroverted facts disclosed in this case do not in the opinion of the court sustain the plaintiff's action, and, therefore, the entry must be,

*Judgment for defendant.*